{¶ 16} On this appeal from a conviction and sentence following a jury trial before Judge Christine T. McMonagle, I concur in judgment only. Although I agree that Gresham is not entitled to a reversal of his conviction, I respectfully disagree with the majority's statement that evidence of potential penalties is irrelevant or only marginally probative of bias.
 {¶ 17} When cross-examining a witness for bias concerning a plea agreement, the critical issue is determining what the witness expected to gain from testifying.[2] If the witness agreed to testify in exchange for plea considerations, his understanding concerning the penalties he faced as opposed to the penalties he avoided is not only relevant, but highly probative of the witness's potential bias because it is the "crux of the plea agreement."[3] Therefore, even though a jury ordinarily should not be told the potential penalties faced by a defendant, that rule must give way to the defendant's constitutional and paramount right of confrontation.[4]
 {¶ 18} A defendant, however, is not automatically entitled to introduce evidence of the penalties involved in a witness's plea bargain.[5] As noted, the issue is the witness's understanding of the benefits expected or received, not the actual penalties. If the witness has knowledge of the actual penalties that fact is a proper topic for cross-examination. If, however, the witness's understanding is incorrect, it is the witness's expectation that must be explored rather than the actual penalties.
 {¶ 19} Of course, a defendant is not required to proffer expected responses to questions posed on cross-examination[6] and, therefore, even though he is not entitled to present independent evidence of the penalties, he should be allowed to cross-examine the witness concerning the benefit expected from a plea bargain, including the witness's understanding of the difference between the penalties faced and avoided. Neither Evid.R. 402 nor 403(A) prevents such questioning because the evidence is highly relevant and necessary to ensure the defendant's constitutional right of confrontation. Preventing such questioning not only denies the right of confrontation but invites the jury to speculate on the issue, and "[n]either of these results is acceptable."[7]
 {¶ 20} Because the error here concerns Gresham's constitutional right of confrontation, reversal would be required unless the State meets a heavy burden of showing that it was harmless beyond a reasonable doubt.[8] This burden can be met by showing that other evidence against the defendant was so overwhelming that the error did not affect his conviction.[9] The evidence here satisfies that standard because Gresham's three accomplices each placed him in the car with a gun at the time of the shooting and at least one witness other than the accomplices also placed him in the car. Gresham was convicted of three felonious assaults[10] with both three and five-year firearm specifications, and involuntary manslaughter[11] for causing a death during the commission of the felonious assaults. Under the complicity statute[12] the jury did not need to find that Gresham possessed or even fired a gun during the incident, but only that he participated in the offenses as committed by anyone in the car.[13]
 {¶ 21} A different question might be presented if he had been convicted of offenses greater than those of the other participants, but the record here establishes his presence and participation in the shooting regardless of the error in limiting cross-examination. Moreover, I agree that Gresham was not denied all opportunity to cross-examine the witnesses concerning bias, and this strengthens my belief that the error was harmless. The witnesses generally did not testify that Gresham's role was any greater than their own, and further questioning concerning their plea agreements was unlikely to affect the jury's determination concerning his involvement in crimes shared by all participants. Therefore, I concur in judgment only on the first assignment of error.
 {¶ 22} I also concur in the judgment with respect to the consecutive terms imposed for the firearm specifications, although I note that, pursuant to my separate opinion in State v. Zima,[14] I consider the felonious assault and the involuntary manslaughter offenses to be allied. The Ohio Supreme Court's opinions in State v. Rance,[15] Statev. Richey,[16] and State v. Grant,[17] are in direct conflict with the United States Supreme Court's opinion in Whalen v. United States.[18]
Because multiple punishments for these offenses are not statutorily authorized, their imposition violates double jeopardy protections under the United States Constitution.
[2] State v. Simms (1983), 9 Ohio App.3d 302, 303, 9 OBR 549,459 N.E.2d 1316; State v. Aldridge (1981), 3 Ohio App.3d 74, 78, 3 OBR 86, 443 N.E.2d 1026.
[3] People v. Mumford (1990), 183 Mich. App. 149, 153, 455 N.W.2d 51
(citation omitted).
[4] Id. at 153-154; State v. Vogleson (2002), 275 Ga. 637, 640-641,571 S.E.2d 752; Jarrett v. State (Ind. 1986), 498 N.E.2d 967, 968-969;Watson v. State (Ind. 1987), 507 N.E.2d 571, 572.
[5] See Simms, 9 Ohio App.3d at 303-304 (expert testimony concerning punishments is inadmissible).
[6] Evid.R. 103(A)(2).
[7] Mumford, 183 Mich. App. at 154.
[8] Vogleson, 275 Ga. at 641-642.
[9] State v. Griffin (2001), 142 Ohio App.3d 65, 80, 753 N.E.2d 967.
[10] R.C. 2903.11.
[11] R.C. 2903.04(A).
[12] R.C. 2923.03.
[13] State v. Moore (1985), 16 Ohio St.3d 30, 32-33, 16 OBR 410,476 N.E.2d 355; State v. Chapman (1986), 21 Ohio St.3d 41, 21 OBR 327,487 N.E.2d 566, syllabus.
[14] Cuyahoga App. No. 80824, 2002-Ohio-6327, at ¶ 47-48 (Kilbane, J., concurring in part and dissenting in part).
[15] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[16] 64 Ohio St.3d 353, 1992-Ohio-44, 595 N.E.2d 915.
[17] 67 Ohio St.3d 465, 1993-Ohio-171, 620 N.E.2d 50.
[18] (1980), 445 U.S. 684, 694, 100 S.Ct. 1432, 63 L.Ed.2d 715.