PEOPLE v WALLACE

Docket No. 74797. Submitted February 13, 1986, at Grand Rapids.
    Decided May 5, 1987.

    A jury in the Oakland Circuit Court found Darrell R. Wallace
    guilty but mentally ill of manslaughter. The trial court, Rich-
    ard D. Kuhn, J., sentenced defendant to from five to fifteen
    years imprisonment. Defendant appeals alleging several errors.
        The Court of Appeals *held:*
        1. The prosecutor's failure to file and serve a notice of
    rebuttal of the defense of insanity, including the name of an
    expert witness to be called by the prosecutor, was not error
    requiring reversal.
        2. Certain remarks made by the prosecutor during his open-
    ing statement, and objected to by the defendant on appeal,
    were not so serious as to compel reversal.
        3. The prosecutor's remarks during closing argument in
    which reference was made to the consequences of a not-guilty-
    by-reason-of-insanity verdict constitute error. Although defen-
    dant failed to object thereto at trial, it is doubtful that a
    curative instruction could have corrected the error and, there-
    fore, appellate review of the issue is not foreclosed.
        4. The prosecutor's clear disparagement of the not-guilty-by-
    reason-of-insanity defense, a defense allowed by law, was im-
    proper and constituted error which requires reversal even if no
    objection was made. The argument was clearly improper and
    tantamount to a misstatement of the law which deprived
    defendant of a fair trial.
        5. It was not permissible for the prosecutor to specifically

REFERENCES
Am Jur 2d, Appeal and Error §§ 624-627.
Am Jur 2d, Criminal Law §§ 46 *et seq.;* 65-82.
Am Jur 2d, Prosecuting Attorneys §§ 20, 23, 24, 26-28.
Notice to government of defense based upon defendant's mental
    condition at the time of alleged crime, and court-ordered psychi-
    atric examination thereon, under Rule 12.2, Federal Rules of
    Criminal Procedure. 63 ALR Fed 552.
See also the annotations in the Index to Annotations under Appeal
    and Error; Incompetent and Insane Persons; Prosecuting Attor-
    neys.

invite the jury to compromise between a verdict of guilty and not guilty by reason of insanity by picking the middle ground of guilty but mentally ill.

6. The cumulative effect of the unobjected to errors by the prosecutor requires reversal.

Reversed and remanded.

1. Criminal Law — Defenses — Insanity — Notice of Defense — Notice of Rebuttal.

A defendant must undergo an examination by personnel of the Center for Forensic Psychiatry after filing notice of his intention to assert the defense of insanity; a prosecutor who wishes to offer a rebuttal to such a defense must file and serve upon the defendant a notice of rebuttal of the defense, including the names of witnesses the prosecutor proposes to call in rebuttal, within the time provided by statute; a court must exclude evidence offered by the prosecutor in rebuttal to the defendant's evidence relevant to the defense if the prosecutor fails to file and serve the notice of rebuttal as provided by statute (MCL 768.20a, 768.21[2]; MSA 28.1043[1], 28.1044[2]).

2. Criminal Law — Defenses — Insanity — Notice of Defense.

The purpose of requiring notice of the intent to claim the defense of insanity is to protect the public, avoid unfair surprise to the prosecution at trial, protect the integrity of the evidence regarding an insanity defense and prevent surprise to the defendant (MCL 768.20a; MSA 28.1043[1]).

3. Criminal Law — Defenses — Insanity.

Neither the court nor counsel should comment to the jury concerning the disposition of a defendant upon a finding of not guilty by reason of insanity (MCL 768.36; MSA 28.1059).

4. Appeal — Preserving Question.

Appellate review of alleged error may occur, despite the failure to make a timely objection, where the prejudice was so great that it could not have been corrected by a curative instruction even if a timely objection had been made.

5. Prosecuting Attorneys — Duty.

It is the duty of the prosecutor to ensure that a defendant has a fair and impartial trial and to seek justice, not merely to convict.

6. Prosecuting Attorneys — Prosecutorial Comment.

A prosecutor oversteps the bounds of permissible argument when appealing to a jury to disregard a defense which is sanctioned

by the Legislature and the Supreme Court; the disparagement of a defense allowed by law is not proper and constitutes error which requires reversal even if no objection is made.

7. PROSECUTING ATTORNEYS — CRIMINAL LAW — COMPROMISE VERDICTS.

It is not permissible for a prosecutor to specifically invite a jury to compromise between a verdict of guilty and not guilty by reason of insanity by picking the middle ground of guilty but mentally ill; the jury should be asked first to determine whether there is mental illness and then to make a determination of whether the mental illness has ripened into insanity.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Otis M. Underwood, Jr.,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and SHEPHERD and D. A. ROBERSON,* JJ.

PER CURIAM. An Oakland County jury found defendant guilty but mentally ill of manslaughter, MCL 768.36; MSA 28.1059. He was sentenced to from five to fifteen years imprisonment, and now appeals as of right.

Three days after the decedent was found brutally murdered in his bedroom, defendant, a friend of the decedent, was arrested and made a full confession. The jury heard the confession. The only issue at trial was defendant's sanity.

Defendant first contends that the prosecutor did not comply with the notice requirements of MCL 768.20a; MSA 28.1043(1) concerning rebuttal witnesses to the defense of insanity and that the trial judge erred in denying defendant's motion to ex-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

clude a witness' testimony. According to MCL 768.20a; MSA 28.1043(1), which establishes the procedure for presenting an insanity defense, after a defendant files notice of his intention to assert the defense of insanity, he must undergo an examination by personnel of the Center for Forensic Psychiatry. Section 20a(2). Then, according to subsection (7), within ten days after the receipt of the report from the Center for Forensic Psychiatry, but not later than five days before trial, or at such other time as the court directs, the prosecutor must file and serve upon the defendant a notice of rebuttal of the defense of insanity, including the names of witnesses whom the prosecutor proposes to call in rebuttal.

Defendant filed his notice of insanity some three months prior to trial, and was ordered to undergo an evaluation at the forensic center in compliance with the statute. But defendant asserts that he never received the prosecutor's notice of rebuttal as required by subsection (7). At trial, defendant's expert witness, Dr. Mako, testified that defendant had a significant mental illness as well as a personality disorder which could lend itself to brief psychotic episodes. In rebuttal, the people's expert, Dr. Roam, testified that, even in light of any personality disorder, the defendant did not have a mental illness and did not meet the statutory requirements for insanity. Defendant admits that his attorney received a copy of Dr. Roam's report about one month before trial but contends that the notice requirement of the statute was not followed. According to MCL 768.21(2); MSA 28.1044(2), if the prosecutor fails to file and serve a notice of rebuttal upon the defendant as provided in § 20a, the court must exclude evidence offered by the prosecution in rebuttal to the defendant's evidence relevant to the defense. Defense counsel moved to

exclude Dr. Roam's testimony at trial, but the trial court denied the motion without comment.

The purpose of requiring notice of intent to claim the defense of insanity is to protect the public and avoid unfair surprise to the prosecution at trial. *People v Giuchici,* 118 Mich App 252, 263; 324 NW2d 593 (1982). The statute is also designed to protect the integrity of the evidence regarding an insanity defense. *People v Hayes,* 421 Mich 271, 280; 364 NW2d 635 (1984). This Court has also determined that the purpose of subsection (7) is to prevent surprise to the defendant. See *People v Coulter,* 94 Mich App 531, 534-535; 288 NW2d 448 (1980); *People v Stinson,* 113 Mich App 719, 724-725; 318 NW2d 513 (1982). In this case, as in · *Coulter* and *Stinson,* defendant was notified in advance of trial that the prosecutor intended to call a rebuttal witness. Counsel additionally had the report indicating what the substance of the witness' testimony would be. Unlike in *People v Jurkiewicz,* 112 Mich App 415, 419; 316 NW2d 440 (1982), on which defendant relies, we cannot say that the testimony rebutting defendant's insanity defense "completely surprised defendant." We in no way condone the prosecutor's failure to file and serve the notice of rebuttal as required by the statute, but, in this case, the prosecutor's omission was not error requiring reversal.

Defendant also objects on appeal to remarks made by the prosecutor in his opening statement and closing argument. The remarks made during the opening statement are not so serious as to compel reversal.

We are more troubled by remarks of the prosecutor during closing argument. The defendant claims that in referring to the consequences of a not-guilty-by-reason-of-insanity verdict, the prosecutor's closing argument was so prejudicial as to

require reversal despite defendant's failure to object.

Our Supreme Court has addressed this issue in *People v Szczytko,* 390 Mich 278; 212 NW2d 211 (1973). There, the prosecutor made the following argument:

> Counsel brings up, if you come back by reason of —not guilty by reason of insanity that the defendant will go to a mental institution appropriate [sic] considered and according to the laws of the State of Michigan. That's right. But, *all he has to do is, through some legal paper work ask to be released—. [Id.,* p 283.]

An objection followed and the trial court sustained it despite the fact that defendant's counsel had originally broached the issue. The Supreme Court, in a divided opinion, affirmed the conviction because it found the error not prejudicial (opinion by Justice COLEMAN) or because it could have been corrected by a curative instruction had one been requested (Justices LEVIN and T. G. KAVANAGH concurring in affirmance). However, a majority of the Court concurred with the analysis in Justice SWAINSON's dissent where he stated, "Although our Court in [*People v Cole,* 382 Mich 695; 172 NW2d 354 (1969)] did not expressly restrict the prosecution or defense from arguing to the jury on the disposition of a defendant found not guilty by reason of insanity, we find that the implicit rationale of *Cole* precludes such argument." *Szczytko, supra,* p 299.

In *People v Goad,* 421 Mich 20, 25-26; 364 NW2d 584 (1984), the Court, citing *Szczytko,* stated as follows:

> The rule in Michigan has always been that neither the court nor counsel should address them-

selves to the question of the disposition of a defendant after the verdict. Indeed, it is proper for the court to instruct the jury that they are not to speculate upon such matters, and that they are to confine their deliberations to the issue of guilt or innocence. *People v Szczytko,* 390 Mich 278, 285; 212 NW2d 211 (1973) (Opinion of BRENNAN, J.).

The issue in *Goad* pertained to the propriety of the trial court's use of CJI 7:8:08 concerning disposition of a defendant if a verdict of not guilty by reason of insanity was reached. The rule of law stated there, however, would apply equally to an attorney's statements on the same subject made during closing argument.

In the present case, the prosecutor's argument exceeded the bounds established in *Szczytko* and *Goad* on three occasions. In closing argument, the prosecutor stated:

> Judge Kuhn will tell you about the disposition of a person if such a verdict is returned and he has to do that under the law. And, certainly he gives you the law, not me, but we do have a right to tell you our theory of the law. But, Judge Kuhn will give you that and that is that if such a verdict should come back, then the defendant is sent to where? To the Forensic Center of the State of Michigan to determine whether he is mentally ill. If not, he gets released.

And in rebuttal following defendant's closing argument, the prosecutor stated:

> Mr. Underwood talked about going forward in the law and, you know, we are going forward and we are getting further and further into this legal insanity. I agree we are going forward and from my standpoint we are seeing more and more of it as a defense, and more and more of it [sic] are

people getting off because of it. Now, if that is going forward I question it.

It is clear that these remarks constitute error. The prosecutor's statement that "Judge Kuhn will tell you about the disposition of a person [if a not-guilty-by-reason-of-insanity] verdict is returned" is an apparent reference to CJI 7:8:07 or 7:8:08, wherein such a disposition is discussed. Because the jury instructions offered to the jury have not been transcribed, it is unclear whether either of these instructions was rendered. However, the possibility that they were is not relevant to the resolution of this matter. In *Szczytko,* an instruction was also given. The Supreme Court found error nonetheless, not in the instruction, but in the prosecutor's remarks. Furthermore, the prosecutor's subsequent remarks were made without reference to a prospective jury instruction.

The issue which divided the *Szczytko* Court was not whether there was error on the record, but whether that error required reversal. That issue remains in this case.

The test for determining whether appellate review should occur despite a defendant's failure to object is whether the prejudice was so great that it could not have been corrected by a curative instruction even if a timely objection had been made. As this Court stated in *People v Lewis,* 37 Mich App 548, 554; 195 NW2d 30 (1972):

As indicated in *People v Humphreys,* 24 Mich App 411 [80 NW2d 328] (1970), the failure of defense counsel to object to a prosecutor's improper line of argument is a bar to appellate review only where the goal of that objection—a cautionary instruction to the jury—in all likelihood would have eliminated the prejudice arising from the prosecutor's remark; however, where the

> prejudice created cannot be eliminated despite any cautionary instruction that could have been given, and, thus, an objection would have been pointless, a failure to object will not preclude appellate review.

Here, it is doubtful that a curative instruction could have corrected the error. The present case is distinguished from *Szczytko* in that an objection was made there and the trial judge barred further argument relative to the disposition of the defendant. There was no objection here. Also, there the defendant's counsel apparently first broached the issue of disposition upon a not-guilty-by-reason-of-insanity verdict, thereby inviting a response from the prosecutor. Again, such is not the situation in this case.

In the second portion of the transcript quoted above the prosecutor stated, in effect, that he questions whether the use of the defense of insanity is a forward-looking approach. This is a clear disparagement of the defense itself. This is not a case where the prosecutor is saying that the defense should not be applied for reasons unique to this case. Rather, the prosecutor is urging the jury not to apply the defense of insanity because the prosecutor does not like it. This is not only using the prestige of the prosecutor's office in support of its position but it is telling the jury to disregard the law simply because either the prosecutor or the jury might not approve of the defense of insanity. Such disparagement of a defense allowed by law is not proper and constitutes error requiring reversal even if no objection is made. It is the duty of the prosecutor to ensure that a defendant has a fair and impartial trial, as the interest of the people lies in protecting the innocent as well as convicting the guilty. *People v Brocato,* 17 Mich

App 277, 290-291; 169 NW2d 483 (1969); *People v McNary,* 43 Mich App 134, 140-141; 203 NW2d 919 (1972). Further, it is the prosecutor's duty to seek justice, not merely to convict. *People v Erb,* 48 Mich App 622, 631; 211 NW2d 51 (1973), citing *People v Farrar,* 36 Mich App 294, 299, n 5; 193 NW2d 363 (1971). A prosecutor oversteps the bounds of permissible argument when appealing to a jury to disregard a defense which is sanctioned by our Legislature as well as our Supreme Court. Our Legislature and Supreme Court have already made the policy decision to recognize the defense of insanity. Therefore, any argument which a prosecutor chooses to raise in regard to the validity of the defense should be addressed to those bodies, and not the jury. The prosecutor's argument seriously undermined defendant's legally viable defense. The argument was clearly improper and tantamount to a misstatement of the law which deprived defendant of a fair trial. See *People v Matulonis,* 115 Mich App 263; 320 NW2d 238 (1982).

The third major error that the prosecutor made in closing argument is as follows:

Okay. Mr. Underwood did correctly go into some of the verdicts Judge Kuhn will tell you about and that's the last area I wish to cover, I'm certainly not going to get into it. It is a little complicated and Judge Kuhn can better explain it to you. But, in thinking over this case and thinking over the many verdicts that are possible I didn't count them, six or seven, in my opening statement I did say that it was our opinion that this was clearly the crime of second-degree murder. I know, from my many years of experience that jurors go in there and use their common sense and often times they try to compromise and try to work it out and so I say to you, if you are going to compromise it a very good compromise is allowed under the law

and that is guilty but mentally ill. Our doctor certainly did not say this defendant suffers from a mental illness, it was a mental disorder, but if you do feel, in your hearts, that there was some mental illness involved the people contend if you are going to compromise it that is a good compromise verdict in this case.

Although the prosecutor added language to the effect that the jury should find defendant guilty but mentally ill if they believed there was a mental illness, it is clear from the above language that the prosecutor was inviting the jury to compromise between a verdict of guilty and a verdict of not guilty by reason of insanity, particularly in view of the disparagement already committed with respect to the defense of insanity. In *People v Ramsey,* 422 Mich 500, 514-515; 375 NW2d 297 (1985), the Supreme Court stated:

> All members of a criminal jury must agree beyond a reasonable doubt to the same verdict. That is not to say that individual jurors cannot change their initial view of a case and ultimately reach a common ground with the others. Provided that in the end all jurors agree beyond a reasonable doubt as to the verdict, there is absolutely no prohibition of a juror changing positions during deliberations. Juror deliberations, however, must be distinguished from juror compromise. When jurors give up their beliefs to settle on a common ground with other jurors, who may have also abandoned their convictions in the interest of agreement, a compromise verdict results. When jurors forsake their convictions simply to reach a verdict, the defendant has not been found guilty beyond a reasonable doubt by all members of the jury.

The Supreme Court then concluded that although juror compromise is a fact of life, since the

possibility of compromise is present in every case, the boundaries within which compromise may occur must be legally and factually supportable. While the Supreme Court has not clearly established the kinds of compromise that are not permitted, we conclude that it is not permissible for a prosecutor to specifically invite a jury to compromise between a verdict of guilty and not guilty by reason of insanity by picking the middle ground of guilty but mentally ill. The jury must be asked to first determine whether there is mental illness and then to make a determination of whether the mental illness has ripened into insanity. That, to us, is the only proper argument in an insanity case.

Accordingly, since the prosecutor attempted to convince the jury that if they found the defendant not guilty by reason of insanity he would be released on the streets, since the prosecutor disparaged the defense of insanity itself and since the jury was asked to compromise on a verdict of guilty but mentally ill, we find that the cumulative effect of these errors requires reversal even though no objection was raised. Accordingly we find it unnecessary to address the issue of ineffective assistance of counsel.

We recognize that in a particularly brutal case where the defendant admits perpetrating the acts and raises the defense of insanity, the temptation will be great to place the insanity defense on trial along with the defendant. However, it is not the function of the prosecutor to question the wisdom of the insanity defense once the Legislature has adopted it and defined it. We do not need to address the question of whether the Legislature as a matter of constitutional law could eliminate the insanity defense but we do hold that, once it is

conceded that the defense exists, it must be treated by counsel and the courts as being as valid a defense as any other.

Reversed and remanded for new trial.