PEOPLE v BAILEY

Docket Nos. 99723, 99724. Submitted April 13, 1988, at Lansing. Decided June 21, 1988.

Ronald L. Bailey was convicted following a jury trial in the Livingston Circuit Court of kidnapping and first-degree murder. The trial court, Stanley J. Latreille, J., sentenced defendant to from sixty-five to one-hundred years imprisonment on the kidnapping conviction and to a mandatory term of life imprisonment on the murder conviction. Defendant appealed alleging several errors.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in denying defendant's motion for a change of venue.

2. The trial court did not err in denying defendant's motions to require a bond to secure the presence at trial of witness Dr. Jose Tombo or for a continuance to secure the witness' testimony when Dr. Tombo failed to appear at trial.

3. The trial court did not err in refusing to ask the jurors during voir dire whether they understood that, if a defendant is found not guilty by reason of insanity, it does not mean that he is a free man, but means that he immediately will be committed to an institution for treatment.

Affirmed.

1. APPEAL — CRIMINAL LAW — VENUE — CHANGE OF VENUE — JURY — PEREMPTORY CHALLENGES.

A defendant's failure to utilize all of his peremptory challenges will not per se preclude the defendant from assigning error on appeal in regard to the trial court's denial of defendant's motion for a change of venue; it is, however, a factor to be considered in showing that the jury was satisfactory when finally empaneled.

REFERENCES

Am Jur 2d, Continuance §§ 7-10, 29-32.
Am Jur 2d, Criminal Law §§ 361 *et seq.,* 688.
Am Jur 2d, Witness § 6.
Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

2. CRIMINAL LAW — VENUE — CHANGE OF VENUE.

Venue in a criminal case may be changed upon good cause shown by either party (MCL 762.7; MSA 28.850).

3. CRIMINAL LAW — VENUE — CHANGE OF VENUE — APPEAL.

A motion for a change of venue in a criminal case is addressed to the trial court's discretion and the exercise of that discretion will be overturned on appeal only on a finding of abuse; an abuse of discretion will not be found where a trial court elects to defer determination of a request for a change of venue until jury selection has been attempted in the original county.

4. CRIMINAL LAW — VENUE — CHANGE OF VENUE — PRETRIAL PUBLICITY.

The existence of pretrial publicity does not itself require a change of venue; if jurors are able to set aside their impressions or opinions and render a verdict based upon the evidence adduced at trial, a change of venue is not necessary; a change of venue because of pretrial publicity is proper only where there is a finding of a strong community feeling or a bitter prejudice toward the defendant.

5. CRIMINAL LAW — MATERIAL WITNESSES — BAIL.

A court of record may require a material witness in a criminal case to enter into a recognizance with such sureties and in such amounts as the court may deem necessary to ensure his appearance at trial where there is danger of the loss of testimony of the witness unless he is required to furnish bail or be committed; it is within the court's discretion to require a material witness to post bond; it is proper to require such bond only when there is reason to believe that the witness will not be available when his or her testimony might become necessary (MCL 767.35; MSA 28.975).

6. TRIAL — CONTINUANCES — MATERIAL WITNESSES.

It is within a trial court's discretion to grant a motion for a continuance or stay of proceedings where a material witness is absent at trial; reversal will be granted only where denial of the motion is an abuse of discretion and the moving party is prejudiced so that he is denied a fair trial.

7. CRIMINAL LAW — TRIAL — DISPOSITION OF DEFENDANT AFTER VERDICT.

Reference to the disposition of the defendant after the verdict is proscribed throughout the trial.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *Thomas A. Hallin,* Prosecuting Attorney, and *David Batdorf-Barnes,* Assistant Prosecuting Attorney, for the people.

*Ronald E. Kaplovitz,* for defendant on appeal.

Before: BEASLEY, P.J., and H. HOOD and R. L. TAHVONEN,* JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of kidnapping, MCL 750.349; MSA 28.581, and first-degree murder, MCL 750.316; MSA 28.548. Defendant was sentenced to sixty-five to one-hundred years imprisonment on the kidnapping charge and mandatory life imprisonment on the murder charge. Defendant appeals as of right. We affirm.

The charges in this case arise from the kidnapping and murder of thirteen-year-old Shawn Moore in the late summer of 1985. At trial, defendant admitted killing the boy, but claimed he was insane at the time.

On appeal, defendant first claims that the trial court erred in denying his pretrial request for a change in venue from Livingston County. At the hearing on the motion, defense counsel played a videotape for the court which exemplified the type of coverage the local television stations were giving the case on their newscasts. Posters and newspaper articles from the local papers were also entered as exhibits. The community had offered a $50,000 reward for the safe return of Shawn Moore. The community had also distributed a leaflet which was captioned: "Shawn Moore's accused murderer has twice been convicted of crimes involving young boys and twice given probation—and now—Shawn is dead. It could be your child!"

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Defense counsel argued that Livingston County was a small community that had become actively involved in defendant's prosecution. Therefore, it would be impossible for defendant to get a fair trial in the venue.

The prosecution countered that, while there had been extensive pretrial publicity, it had not prejudiced the community against defendant. He urged the court to defer its decision on change of venue until after jury selection. The court took judicial notice of the fact that there had been extensive media coverage of the instant case. However, the court stated its confidence that it would be possible to empanel an impartial jury. The court therefore denied defendant's motion for an immediate change of venue and invited defense counsel to renew the motion if its attempts to empanel a fair jury were unsuccessful.

In *People v Jancar,* 140 Mich App 222, 229-230; 363 NW2d 455 (1985), this Court set forth the law on change of venue:

> Venue of a criminal case may be changed "upon good cause shown by either party." MCL 762.7; MSA 28.850. A motion for change of venue in a criminal case is addressed to the trial court's discretion, and the exercise of that discretion will be overturned on appeal only on a finding of abuse. *People v Clay,* 95 Mich App 152, 160; 289 NW2d 888 (1980), lv den 409 Mich 857 (1980). An abuse of discretion will not be found where a trial court, as here, elects to defer determination of a request for change of venue until jury selection has been attempted in the original county. *People v Nixon,* 114 Mich App 233, 240; 318 NW2d 655 (1982).
>
> Moreover, the existence of pretrial publicity does not itself require a change of venue. *Murphy v Florida,* 421 US 794; 95 S Ct 2031; 44 L Ed 2d 589 (1975). If jurors are able to set aside their impres-

sions or opinions and render a verdict based upon the evidence adduced at trial, a change of venue is not necessary. *People v Prast (On Reh),* 114 Mich App 469, 477; 319 NW2d 627 (1982). A change of venue is proper only where there is a finding of a strong community feeling or a bitter prejudice towards the defendant. *Id.*

Although a defendant's failure to utilize all of his peremptory challenges will not per se preclude him from assigning error on appeal, it is a factor to be considered in showing that the jury was satisfactory when finally empaneled. *People v Haggart,* 142 Mich App 330, 336; 370 NW2d 345 (1985), lv den 426 Mich 876 (1986).

In the instant case, while there was widespread publicity, it appears that through careful and considered effort an impartial jury was selected. The jury selection process took five days, and the trial court and counsel took a considerable amount of time and energy to seat the jury. Each prospective juror was asked if he or she had been exposed to the media coverage of the case. The jurors were also asked if they had formed an opinion as to the guilt or innocence of defendant. The court inquired of each juror whether he or she could remain fair and impartial. Each prospective juror was asked if he or she would agree not to discuss the case with anyone. In addition, the jurors were told not to watch television, listen to the radio, or to read any newspaper article about the case, and to base his or her verdict only on the evidence admitted in the courtroom. Defense counsel expressed satisfaction with the jury without using all of his peremptory challenges.

On the basis of the record, it does not appear that the court abused its discretion by denying defendant's motion for change of venue. As is permissible, the court delayed ruling on defen-

dant's motion until after the jury selection process. Having personally questioned the prospective jurors, the court was able to determine whether there was a feeling of prejudice in the community directed toward defendant. The court stated that it found "an ability and willingness to afford the defendant . . . all the protections of the law." Thus, we feel the court did not err. See *People v Hart,* 161 Mich App 630; 411 NW2d 803 (1987).

Next, defendant claims the trial court erred in failing to declare Dr. Jose Tombo a material witness and to fully assist in securing his testimony for trial. Before trial, defendant filed a motion in district court to have Dr. Tombo declared to be a material witness and to require a bond to secure his presence at trial. Counsel argued that Dr. Tombo was a material witness because he had treated defendant for three years and alleged irregularities in the treatment had a profound impact on defendant's state of mind. Defense counsel argued that there was a suspicion Dr. Tombo might flee because he was a former resident of the Philippines and still had a valid passport, had been suspended from his job, and had been the focus of widespread media attention. In response, counsel for Dr. Tombo stated that Dr. Tombo had lived in the same apartment for twelve years, was fighting for reinstatement of his job, had a substantial property interest in his state retirement fund, and had previously met voluntarily with defense counsel in defense counsel's office.

The court stated it was not convinced that Dr. Tombo was a material witness, but that he would consider Dr. Tombo to be a material witness for purposes of defendant's motion. Nevertheless, the court did not believe that there was a danger of loss of Dr. Tombo's testimony unless he furnished bail. The court invited defense counsel to raise this

motion again should facts in the future indicate that Dr. Tombo would not show up at trial.

When trial commenced, Dr. Tombo did not appear. Therefore, defense counsel brought a motion for a stay of proceedings due to his inability to locate Dr. Tombo. Defense counsel argued that Dr. Tombo was a crucial witness because he had told defendant's father, in a phone call prior to the trial, that he could help defendant's insanity defense.

The prosecution outlined its extensive efforts to locate Dr. Tombo prior to trial. The prosecution argued that the defense had not shown the materiality of Dr. Tombo's proposed testimony and also that all possible efforts to locate him had been made.

The court denied defendant's motion, ruling that Dr. Tombo was not a material witness, that a stay of proceedings would not be helpful in producing Dr. Tombo for trial, and that the loss of Dr. Tombo's testimony was, in part, defense counsel's fault because defense counsel had not deposed Dr. Tombo when they had a chance. The court ruled that defendant had not exercised due diligence to secure Dr. Tombo's testimony.

MCL 767.35; MSA 28.975 states:

> When it appears to a court of record that a person is a material witness in a criminal case pending in a court in the county and that there is a danger of the loss of testimony of the witness unless the witness furnishes bail or is committed if he or she fails to furnish bail, the court shall require the witness to be brought before the court. After giving the witness an opportunity to be heard, if it appears that the witness is a material witness and that there is a danger of the loss of his or her testimony unless the witness furnishes bail or is committed, the court may require the

witness to enter into a recognizance with a surety in an amount determined by the court for the appearance of the witness at an examination or trial. If the witness fails to recognize, he or she shall be committed to jail by the court, until he or she does recognize or is discharged by order of the court.

The statute permits a court of record to require a material witness in a criminal case to "enter into a recognizance with such sureties and in such amounts" as the court may deem necessary to ensure his or her appearance at trial. *People v Baldwin,* 74 Mich App 700, 705; 254 NW2d 619 (1977), rev'd on other grounds 405 Mich 550; 275 NW2d 253 (1979). By its own terms, the statute may be invoked only when "there is danger of the loss of testimony of such witness unless he be required to furnish bail or be committed." *Baldwin, supra,* p 705. Therefore, requiring a material witness to post bond under the statute is within the court's discretion and is proper only when there is reason to believe that the witness will not be available when his or her testimony might become necessary. *Baldwin, supra,* p 705.

If a material witness is absent at trial, it is within the trial court's discretion to grant a motion for a continuance or stay of proceedings. MCR 2.503(C)(2). Reversal will be granted only where denial of the motion is an abuse of discretion and the moving party is prejudiced so that he is denied a fair trial. *Larion v Detroit,* 149 Mich App 402, 410; 386 NW2d 199 (1986), lv den 426 Mich 861 (1986). In *Larion,* the Court noted that the moving party's handicap was partially attributed to itself, because the moving party failed to depose its crucial witness when it had a chance. *Larion, supra,* pp 410-411.

In the instant case, the record reveals that the

substance of Dr. Tombo's expected testimony was not crucial to the defense. In addition, the prosecutor listed its extensive efforts to locate Dr. Tombo. Defense counsel did not preserve Dr. Tombo's testimony by deposing him prior to trial. In addition, if the extensive efforts outlined by the prosecution to locate Dr. Tombo had proved fruitless, a continuance would not likely have helped to secure Dr. Tombo's testimony. Under all the circumstances, we find that the court did not err in denying defendant's motions for bond or for a continuance.

Next, defendant claims the trial court erred in refusing to ask the jurors during voir dire whether they understood that, if a defendant is found not guilty by reason of insanity, it does not mean that he is a free man, but means that he immediately will be committed to an institution for treatment. The scope of voir dire examination of prospective jurors is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Harrell,* 398 Mich 384, 388; 247 NW2d 829 (1976). In *People v Goad,* 421 Mich 20; 364 NW2d 584 (1984), the Court held that jurors are not to be concerned with the consequences of their verdicts. A limited exception to this rule previously existed for a defense based on insanity. In *People v Cole,* 382 Mich 695, 720-721; 172 NW2d 354 (1969), the Court held that a jury should be instructed as to the consequences of a verdict of not guilty by reason of insanity.

The general rule proscribing reference to the disposition of the defendant after the verdict has also been applied to areas other than jury instructions. For instance, it is improper for counsel to refer during closing argument to the disposition of a defendant after the verdict. *People v Wallace,* 160 Mich App 1, 6; 408 NW2d 87 (1987). The

*Wallace* Court relied on *People v Szczytko,* 390 Mich 278, 285; 212 NW2d 211 (1973). While no cases have dealt specifically with our instant situation—referring at voir dire to the question of a defendant's disposition after verdict—the above-cited authorities make it abundantly clear that the general rule applies throughout the trial. *Goad, supra,* pp 25-26, *Szczytko, supra,* p 285, *Wallace, supra,* p 6.

In the instant case, the court asked the jurors questions about the insanity defense. Defense counsel could have detected any prejudice against defendant from these questions, and utilized challenges to remove these jurors. In fact, the record reveals that defense counsel excused six jurors for bias against the insanity defense. Thus, we conclude that the court did not err in declining to give defendant's proffered question to the jurors.

Affirmed.