*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 12, 2020

Plaintiff-Appellee,

v

No. 346293
Manistee Circuit Court
LC No. 18-004800-FH

EDDIE LEE SCOTT,

Defendant-Appellant.

Before: MURRAY, C.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of aiding and abetting possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), as a subsequent offense, MCL 333.7413(1), for which he was sentenced to 2 to 40 years' imprisonment. We affirm.

## I. BASIC FACTS

On the afternoon of September 18, 2017, officers responded to Riverside Motel in Manistee after receiving a report of suspected drug trafficking out of a motel room. The officers found defendant and Alexis Burton in the room, and defendant consented to a search of the room. During the search, defendant nodded toward the microwave, behind which officers discovered a box containing several individually wrapped rocks of cocaine. During execution of a search warrant, the officers discovered a scale, a crack pipe, a syringe, and a large rock of cocaine hidden inside a container in defendant's work boot. A "wad of cash" was found on defendant's person, but Burton did not have any cash on her person. Defendant denied knowing about any of the drugs and Burton claimed everything was hers. Defendant was not arrested that day, but Burton was taken into custody and jailed.

Burton later contacted police and changed her story. She accepted a plea deal whereby, in exchange for testifying against defendant, her felony charge of possession with intent to deliver would be reduced to simple possession of cocaine, and her sentence would be deferred. Burton testified that she exchanged sexual favors with defendant in return for cocaine, that he was responsible for the drugs, and that she had lied to the officers because she was afraid of defendant. Defense counsel cross-examined Burton about her inconsistent stories and about the plea deal she

-1-

accepted in exchange for her testimony, but did not elicit specific testimony that Burton avoided a maximum potential sentence of 20 years because of the deal. The jury convicted defendant of aiding and abetting possession with intent to deliver cocaine. Defendant filed a motion for a new trial or a *Ginther*[1] hearing, arguing that his trial counsel was ineffective. The trial court held the *Ginther* hearing, but found that trial counsel was "highly effective" in challenging Burton's credibility, and denied defendant's motion for a new trial.

## II. APPLICABLE LAW AND INSTRUCTIONS

Defendant contends that his trial counsel was ineffective by failing to cross-examine Burton regarding the 20-year potential sentence she avoided in exchange for testifying. Defendant argues that as a result of counsel's oversight, the trial court did not give a jury instruction based on Michigan's Model Criminal Jury Instruction (M Crim JI) 5.13(1), which provides:

> (1) You have heard testimony that a witness, [name witness], made an agreement with the prosecutor about charges against [him / her] in exchange for [his / her] testimony in this trial. *You have also heard evidence that [name witness] faced a possible penalty of [state maximum possible penalty] as a result of those charges.* [Emphasis added.]

Instead, the trial court delivered a jury instruction based on M Crim JI 5.6, which stated:

> Alexis Burton says she took part in a crime that the defendant is charged with committing. Alexis Burton has already been convicted of possession of cocaine pursuant to a plea agreement: Such a witness is called an accomplice. You should examine an accomplice's testimony closely and be very careful about accepting it.
>
> * * *
>
> When you decide whether you believe an accomplice, consider the following: Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases or for some other reason? Has the accomplice been offered a reward or been promised anything that might lead her to give false testimony?
>
> *In exchange for Ms. Burton's truthful testimony in this case she was allowed to plead to possession of cocaine with a deferred sentence, and the charged offense of possession with intent to deliver less than 50 grams of a mixture containing the controlled substance cocaine was dismissed pursuant to the plea agreement.*
>
> Has the accomplice been promised that she will not be prosecuted or promised a lighter sentence or allowed to plead guilty to a less-serious charge? If

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

so, could this have influenced her testimony? Does the accomplice have a criminal record?

> In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness: You should be sure you have examined it closely before you base a conviction on it. [Emphasis added.]

The defendant bears the burden of demonstrating that defense counsel did not provide effective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). This Court follows the two-prong test established in *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984):

> First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted).]

Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Vaughn*, 491 Mich 642, 650; 821 NW2d 288 (2012). Appellate review of the trial court's factual findings is for clear error, and questions of law are reviewed de novo. *Id.* "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted).

Generally, a jury should not be informed of the potential punishment a defendant faces if convicted. *In re Spears*, 250 Mich App 349, 352; 645 NW2d 718 (2002). This rule is designed to prevent a jury from resolving the case on facts unrelated to the defendant's guilt or innocence. *Id.* However, in *People v Mumford*, 183 Mich App 149, 150-151, 153-154; 455 NW2d 51 (1990), we held that a defendant has the right to cross-examine a testifying accomplice concerning the specific sentence that he or she avoided by testifying, even though by doing so the defendant's maximum penalty upon conviction might be revealed. We stated:

> The sentencing consideration received in return for testimony is undeniably a fact which is relevant to a witness' credibility, because it is the crux of the plea agreement. Thus, strict adherence to the rule against informing the jury of defendant's possible punishment upon conviction deprives defendant in this case of the opportunity to present to the jury the most important fact of [an accomplice's] plea bargain. Application of the rule in this case not only deprives defendant of his constitutional right to confrontation but also leaves the matter to jury speculation. Neither of these results is acceptable. [*Id.* at 153-154. (quotation marks and citations omitted).]

Not only does this protect a defendant's right to confront witnesses against him, but it allows him to present all relevant facts to the jury of the witness's motivation to testify. *Id.* at 151-152. However, we held in *People v Allan*, 299 Mich App 205, 220-221; 829 NW2d 319 (2013), overruled in part on other grounds by *People v Cain*, 498 Mich 108, 127-128; 869 NW2d 829 (2015), that this interest does not require counsel elicit the potential penalty an accomplice avoided by testifying. In *Allan*, the defendant effectively cross-examined an accomplice witness about all of the details of her plea bargain without revealing the 20-year maximum penalty for her extortion charge that she avoided by testifying. *Id.* at 220. We determined that the trial court did not abuse its discretion by refusing to allow the defendant to cross-examine the witness about the maximum penalty because the defendant was effectively able to show the witness's bias through cross-examination about the other details of her plea bargain. *Id.* at 220-221. Therefore, in the present case, while it would have been permissible and appropriate for defense counsel to seek to introduce evidence of the 20-year sentence that Burton avoided by testifying, the trial court was not required to admit this evidence if it was requested. *Id*.

## III. *GINTHER* HEARING AND ANALYSIS

At the hearing, defense counsel Ray Richards testified that he had over 20 years of experience and had tried over 30 cases before a jury. He opined that he "aptly challenged" the credibility of Burton. On Richards' cross-examination, Burton admitted that she wanted to sell narcotics to pay for her probation costs. Additionally, Richards testified that he strategically did not admit evidence of the maximum penalty because he believed that the prosecutor would have objected to the testimony, he sufficiently attacked Burton's credibility such that it was unnecessary to argue over sentences, and he had achieved a flow on his cross-examination with Burton making admissions to his questions that he did not want to interrupt. Yet, Richards testified that he was unaware of the *Mumford* decision allowing for admission of a maximum penalty faced by an accomplice before entering into a plea deal. When questioned further about his strategy, Richards explained that he did not believe that Burton would have known the exact penalty that she faced, and he did not want the jury to transfer inferences from that penalty to defendant. Additionally, Richards testified that the facts elicited from Burton demonstrated that she played the "lead role" in the situation because she admitted to accepting full responsibility for the drugs, but only sought a plea deal after being jailed for a period of time. Further, Burton admitted that her acceptance of the plea deal removed her from prison time and even having the case dismissed from her record for successful completion of probation. Again, Richards testified that he effectively cross-examined Burton without interrupting the flow of cross-examination and opening "a can of worms" regarding defendant's circumstances. The trial court reviewed the instructions read to the jury regarding witness credibility and portions of Richards' cross-examination of Burton into the record as well as closing argument. The trial court held that despite failing to elicit the maximum penalty that Burton faced, "the credibility of [Burton] was thoroughly attacked by Mr. Richards during that examination, in this Court's opinion." It further held that Richards, on recross examination, "again hammer[ed] away" at Burton's credibility by noting that she changed her story months after the initial police contact when she was charged with a crime. Ultimately, the trial court ruled:

> . . . I can't find, when I review the trial transcript, the number of times that I personally instructed the jury on how to identify the credibility of a witness, the fact that Mr. Richards as a trained, practicing criminal defense attorney for over 20

> years, the fact that he has testified today under oath that much of his cross-examination strategy was, in fact, strategic because he thought he was establishing what he testified to establish really to attack this witness' credibility during closing, the fact that he didn't ask, really, the number of years that she was facing in this Court's opinion does not sufficiently establish the second prong of Strickland, it simply doesn't.
>
> I can't find that this defendant has been denied a fair trial. When I look at the transcript as a whole, there are countless times in which the jury was provided with guidance how to evaluate this witness' credibility, and this defense attorney, frankly, was, in this Court's opinion, highly effective in that regard; so, the motion for a new trial is denied.

To succeed in the second prong[2] of the *Strickland* test, defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 289-290. In light of the trial court's factual findings, defendant failed to meet his burden of proof. Although the jury was not specifically instructed that Burton avoided a 20-year penalty, it was instructed to consider that she testified in exchange for dismissal of a charge of possession of cocaine with intent to deliver and was allowed to plead to possession of cocaine with a deferred sentence. Defense counsel elicited that Burton admitted to accepting responsibility for the drugs. Although she claimed to do so out of fear of defendant, she did not alter her story when the police removed her from defendant's presence. Rather, after being jailed for a period of time, Burton initiated police contact and changed her story.[3] Defendant cannot demonstrate that the failure to present the maximum penalty faced by Burton would likely have produced a different outcome.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly

---

[2] The trial court resolved this issue on the second prong. Indeed, even if it is assumed that counsel's performance was deficient, defendant did not establish the second prong, particularly where the jury did not convict him as the principal, but on an aiding and abetting theory.

[3] We also note that the prosecutor elicited police testimony that they were called to the motel for a welfare check on Burton. However, on cross-examination, Richards obtained police testimony that the police tip indicated that Burton was at the motel with an unknown male, and "they" were selling drugs.